## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CAROL A. MILES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE** |
| | ) | |
| **v.** | ) | **NO. 1:06-CV-0314-AJB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| ***Commissioner of Social*** | ) | |
| ***Security Administration,*** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

## ORDER AND OPINION[2]

Plaintiff Carol A. Miles ("Plaintiff") brought this action pursuant to §§ 216(i)

and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, to obtain judicial

review of the final decision of the Commissioner of the Social Security Administration

("the Commissioner"), denying her application for Disability Insurance Benefits

---

[1]    On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  Under the Federal Rules of Civil Procedure, Astrue "is automatically substituted as a party."  FED. R. CIV. P. 25(d)(1).  The Clerk is **DIRECTED** to amend the docket to reflect this substitution.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  [Docs. 11, 12].  Therefore, this Order constitutes a final Order of the Court.

("DIB") under the Social Security Act ("the Act").[3]  For the reasons stated below, the undersigned **AFFIRMS** the Commissioner's decision.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 11, 2002, alleging disability commencing on July 2, 2002.[4]  [Record (hereinafter "R") 45-47].  Plaintiff's application was denied initially and on reconsideration.  [R31-32, 39-42].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), [R43], which was held on June 30, 2005.  [R18, 245-64].  The ALJ issued a decision on August 23, 2005, denying

---

[3]       Title II of the Social Security Act provides for federal disability insurance benefits.   42 U.S.C. § 401 *et seq.*   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income benefits for the disabled.   The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).   Although different statutes and regulations apply to each type of claim, in general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, which are not tied to the attainment of a particular period of insurance disability.  *Id.*; *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).   Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

[4]       The Commissioner points out that Plaintiff stated in her application for disability that she was disabled as of July 2, 2001, [R45, 53], but reported that she stopped working on June 28, 2002.  [R53].  In her brief, Plaintiff alleges an onset date of July 2, 2002.  [Doc. 13 at 4].  The Court, therefore, accepts July 2, 2002, as the correct onset date for Plaintiff's period of disability.

AO 72A
(Rev.8/8
2)

Plaintiff's claims on the grounds that she retained the residual functional capacity ("RFC") for a reduced range of light work. [R11-16]. Plaintiff then sought review by the Appeals Council,[5] and submitted additional evidence and argument to it. [R223-42]. On December 15, 2005, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. [R4-7].

Plaintiff filed the instant action in this Court on February 13, 2006, seeking review of the Commissioner's decision. *Carol A. Miles v. JoAnne B. Barnhart,* Civil Action File No. 1:06-CV-0314. [Doc. 2]. The answer and transcript were filed on January 8, 2007. [Docs. 7-8]. The matter is now before the Court upon the administrative record, the parties' pleadings, briefs and oral argument, and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.      STATEMENT OF FACTS

### A.      *Factual Background*

Plaintiff was born on July 12, 1958, and was 46 years old at the time of the administrative evidentiary hearing. [R248]. She has a high school education and some post-secondary school accounting classes. Her past relevant work was as an accounting

---

[5]      The record does not contain Plaintiff's request for review of the ALJ's decision to the Appeals Council. [*See* Doc. 8 at "Court Transcript Index"].

3

clerk.  [R248-49].  Plaintiff alleges disability based on carpal tunnel syndrome in her right hand and shoulder, high blood pressure, pain in her left hand, and stomach and back problems.  Plaintiff also alleged additional impairments from side effects of prescription medication and depression.  [R53, 249-54].

B.     *Medical Records*[6]

The medical evidence is comprised of records from Meridian Medical Group ("Meridian") from 1998 to 2001; Kathleen L. Johnson, M.D., from 1999 and 2001; orthopedist Mark S. McBride, M.D., in 1998 and from 2001 to 2003; Tamara Brown, M.D., from 2001 to 2003; and physical therapy reports in 2001.

Some of Meridian's records are illegible, but they reflect that Plaintiff had electromyography and nerve conduction studies performed on January 19, 1998, at Crawford Long Hospital (ordered by Dr. Nessouli of Meridian) for complaint of right forearm pain.  The motor and sensory conduction studies and the EMG results were

---

[6]     Plaintiff has not cited to the record for any of the assertions contained in her very brief Statement of Facts, in violation of the Court's briefing order. [*See* Doc. 10 at 2 (directing that Plaintiff's statement of the case should contain, *inter alia*, "a summary of the physical and mental impairments alleged; a brief outline of the medical evidence; and a brief summary of other evidence of record[,]" with "[e]ach statement of fact . . .  supported by reference to the page in the record where the evidence may be found.")].  Thus, the facts as set forth in this Order are derived from the Commissioner's Statement of Facts and the Court's independent review of the record.

4

normal, and the accompanying report provided that there was "no sign of neuropathy or radiculopathy in the area examined in the right arm." [R108-10].

Plaintiff was seen at Compass Orthopedics (by Dr. McBride)[7] on July 10, 1998, for complaints of right palm and shoulder pain. Dr. McBride noted that Plaintiff had a history of right arm pain and had undergone three surgeries for the excision of ganglion cysts fifteen years prior and had shown improvement. [R137]. Plaintiff reported that, in December 1997, she experienced an increase in pain and numbness and was treated with wristlets, but that due to continued symptoms of pain, she underwent nerve conduction studies and an MRI in January 1998, which were normal. [R137].[8] Plaintiff also complained in the past of pain radiating to her shoulder and neck. She stated that injections for carpal tunnel pain did not afford relief, so in April 1998, she underwent a right open carpal tunnel release. [*Id.*].

Dr. McBride noted that, at the time of this examination, Plaintiff had no midline cervical tenderness. She also had full cervical motion without radicular symptoms and cervical compression was negative. He also noted that the right shoulder had normal clinical appearance. He further observed that cross-body adductions caused mild right

---

[7]     Compass later became Resurgens Orthopedics.

[8]     *See* R108-10.

AO 72A
(Rev.8/8
2)

shoulder pain but no instability was identified.  In Plaintiff's right wrist and palm, he found localized tenderness about the proximal end of the scar from her carpal tunnel surgery.  She had full wrist flexion and extension with pain on extremes.  X-rays of the shoulder showed no significant spurring around the acromioclavicular (AC) joint and x-rays of the right wrist appeared negative with neutral ulnar variance.  Dr. McBride recommended using a padded glove for heavier activities and a stretching program for the shoulder pain.  He also recommended injections if the shoulder pain persisted. [R137-38].

Meridian's records also reflect a January 14, 1999, prescription for physical therapy for Miles's right shoulder and elbow from Dr. Johnson. [R112].  These records also contain a January 19, 1999, authorization by Marcus E. Moseley, M.D., for physical therapy for right shoulder and hand pain, due to possible tendinitis.  [R111-12].  There also was a note that a hand and arm bone scan was performed at West Paces Ferry Hospital on January 28, 1999, [R112], but the record does not contain the results of that study.

On February 2, 2001, Plaintiff again saw Dr. McBride, complaining of bilateral wrist and hand pain and right shoulder pain, and she received injections of Lidocaine

6

and Celestone.  Plaintiff was instructed to wear wrist braces and to return if necessary. [R131].

Plaintiff complained of stomach pain to Meridian on March 21, 2001, which was assessed as reflux or heartburn.  [R104].  A glucose plasma evaluation was negative for diabetes.  [R105-06].

Plaintiff returned to Dr. McBride in May 2001 with right shoulder pain and left hand paresthesias - - a sensation of tingling, pricking or numbness.  He diagnosed symptoms of cubital tunnel irritation and on-going shoulder pain which was not "clear-cut" in diagnosis.  [R130].

On June 29, 2001, Plaintiff saw Dr. McBride on a complaint of right shoulder pain.  He noted that a June 16, 2001, MRI was consistent with supraspinatus tendonititis.  The physical exam showed tenderness at the right lateral acromion and positive impingement sign.  She had full overhead elevation and 5/5 rotator cuff strength.  He diagnosed right shoulder subacromial bursitis and left hand paresthesias. Plaintiff received right-side Lidocaine and DepoMedrol injections.  [R129].

On July 16, 2001, Plaintiff saw Dr. Brown, for arm and low back pain. Dr. Brown diagnosed carpal tunnel syndrome, gave Plaintiff samples of Celebrex/200mg, and referred her to Dr. McBride.  [R178-80].

AO 72A
(Rev.8/8
2)

In August 2001, Dr. McBride performed right shoulder arthroscopic subcromial decompression and right de Quervain's release[9] upon Plaintiff.  He observed on follow-up that Plaintiff had pain but was gradually improving and could elevate her right arm up to 100 degrees. [R127].  On September 4, 2001, Dr. McBride, noted that Plaintiff experienced moderate discomfort, but was doing well after the procedures, and would start back to light duties on September 17, 2001.  He prescribed Percocet #40, physical therapy,  and instructed Plaintiff to return for a recheck in three to four weeks.  [R126].  On September 28, 2001, Dr. McBride observed that although Plaintiff reported discomfort around the shoulder, her range of motion was improving.  He noted gradual improvement, prescribed continued physical therapy and gave her samples of Celebrex/200mg.  [R125].

Dr. McBride prescribed physical therapy sessions for four weeks,  two to three sessions per week. [R194].  Plaintiff received physical therapy over seven total visits, from September 7, 2001, until October 16, 2001, with one "no-show."  [R181-94].

---

[9]     "De Quervain's disease" is "painful tenosynovitis due to relative narrowness of the common tendon sheath of the abductor pollicis longus and the extensor pollicis brevis.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 481; *see also* WebMD.com., De Quervain's Disease, http://www.webmd.com/a-to-z-guides/De-Quervains-Disease-Topic-Overview  (last visited May 15, 2007) ("a painful inflammation of tendons in the thumb.").

8

In the final progress report dated November 29, 2001, the therapist noted that Plaintiff's range of motion and strength were increasing but were limited by pain. Plaintiff was described as having "had a slow course of rehab and a plateau of progress." [R183].

On October 30, 2001, Plaintiff returned to Dr. McBride, who noted that she had made gradual improvement but still had pain upon elevation. He observed that she had replaced physical therapy with performing home exercises. He gave Plaintiff additional Celebrex samples as well as a prescription for Ultram, and instructed her to return in four to six weeks. [R124].

On November 30, 2001, Plaintiff returned to Dr. McBride with complaints of pain in her right shoulder and wrist. The physical exam revealed the right shoulder elevated to 90 degrees and forward elevated to 90 degrees. X-rays of her shoulder revealed a Type 1 acromion and some AC joint degenerative joint disease. Dr. McBride's impression was that her shoulder pain might be related to residual AC joint pain or simple stiffness of the shoulder, but that her wrist had excellent healing with mild radial sensory nerve neuropraxia which should improve with time. He injected her with Lidocaine and DepoMedrol. Plaintiff was instructed to continue with the stretching program and return in three to four weeks time. [R123].

AO 72A
(Rev.8/8
2)

Plaintiff saw Dr. McBride again on December 28, 2001, complaining of persistent pain in her shoulder and wrist.  He observed that she reported difficulty in typing but that "she has hade difficulty on the keyboard since age 12."  His physical exam revealed that her right shoulder elevated to 120 degrees and abducted to 110 degrees.  Cross-body adduction produced pain about the posterior joint line but not at the AC joint.  Dr. McBride observed that "[t]he patient has persistent pain both at the shoulder and elbow.  Part of this may be related to her pain tolerances.  Her overall exam is gradually improving."  He recommended continuing home exercises and gave her additional samples of Celebrex.  [R122].

On January 23, 2002, Plaintiff returned to Dr. Brown with complaints of leg and knee pain.  [R174].  She returned again on February 13, 2002, with complaints of sinus pain, leg pain and hypertension.  [R173].  Since Plaintiff also complained of some swelling in her right leg, a venous duplex scan of her leg was performed on February 15, 2002, but revealed no evidence of deep or superficial venous thrombosis.  An arterial evaluation of the lower extremities performed the same date revealed no evidence of hemodynamically significant arterial occlusive disease in either lower extremity.  [R167-68].

10

AO 72A
(Rev.8/8
2)

On March 29, 2002, Plaintiff returned to Dr. McBride with complaints of aching but noted improvement from the injections she received in November.  He concluded the aching was from her AC joint.  He gave her a prescription for Vicodin and Celebrex with two refills and instructed her to return on an as-needed basis.  [R121]. She returned on June 14, 2002, reporting increasing pain.  Dr. McBride noted tenderness at the right AC joint and forward elevation to 110 degrees.  He gave Plaintiff another injection of Lidocaine and DepoMedrol and another prescription for thirty (30) Vicodin.  [R120].   He recommended that she undergo distal clavicle resection if the pain persisted and to contact him if she did not see improvement.  [*Id.*].

On July 22, 2002, Plaintiff complained of low back and side pain to Dr. Brown, who prescribed a 30-day supply of Vicodin with no refills.  [R170].  On August 7, 2002, Plaintiff presented to Dr. Brown with the same complaints: low back and side pain, as well as sinus problems.  Dr. Brown prescribed another 30-day supply of Vicodin.  [R169].

Treatment notes from August 7, 2002, and January 6, 2003, also indicate that Plaintiff suffered from hypertension, which appeared to be controlled by medication. [R165, 169].

11

On January 31, 2003, Plaintiff returned to Dr. McBride complaining of two months of intermittent pain over the dorsal left wrist.  X-rays of the wrist were negative in three views.  Physical examination showed no direct tenderness and she had full dorsiflexion and volar flexion.  Plaintiff was negative for Tinel and Phalen's test.[10] Dr. McBride noted that the left wrist pain had "questionable etiology" and  prescribed a wristlet and a thirty (30) day supply of Vicodin.  He also gave Plaintiff samples of Celebrex.  [R119].

C.      *Disability Determination Survey Questionnaires*

On July 11, 2002, Plaintiff completed a disability report in support of her application for benefits.  She indicated that she had carpal tunnel syndrome in her right hand and shoulder and high blood pressure.  She alleged that she could not work due to impairments in her right hand and arm.  [R53].  Under the medications section, Plaintiff noted that she took Lovan for high blood pressure, Corgard for a fast heart beat, Prevacid for acid reflux, Vicodin for pain, and Guaifenex and Claritan for sinus problems.  She listed no side effects other than "jitters" from the Vicodin.  [R58].

--------

[10]      Tinel and Phalen's tests are used to diagnose carpal tunnel syndrome. About.com,CarpalTunnelSyndrome,http://orthopedics.about.com/cs/carpaltunnel/a/c arpaltunnel_2.htm (last visited May 15, 2007).

12

On July 28, 2002, Plaintiff completed Daily Functioning and Pain questionnaires. Plaintiff indicated that her medications caused her to be sleepy and jittery. [R79]. She also wrote that she drove and shopped weekly for food but was always accompanied or assisted because she could not push the cart. She stated that she cooked, although she could not lift pots or clean meat without assistance. She reported that she attended movies and restaurants with her husband. [R80-81]. She stated that she could not scrub, sweep or lift things when doing housework but used her left hand when using a computer. [R84-85].

On January 15, 2003, Plaintiff completed an additional Pain Questionnaire, [R92-96], in which she indicated that she took Vicodin, Ultram, Celebrex, and Cyclobenz (cyclobenzaprine), a muscle relaxant. She claimed that the Vicodin made her jittery and the "anti-inflammitant" upset her stomach, causing nausea, vomiting and diarrhea. [R92]. On this form, Plaintiff indicated that she could not cook because "stirring is painful" and that she could not clean meat or lift pots or pans. She indicated that she required assistance dressing and could not perform household chores or laundry, and required assistance grocery shopping. [R94]. She claimed that she could not operate a motor vehicle and that overuse had caused pain in her left hand. [R95].

13

### D.     The State Agency's Residual Functional Capacity Assessments

In a residual functional capacity evaluation dated April 8, 2003, [R214-21], Dr. Gertler, the State Agency consultant, noted that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. She had no postural limitations. [R215]. He found no evidence of hypertension, and could discern no severe stomach or deep venous thrombosis problems from the medical records he reviewed. He noted that there was no source for her complaints of back pain, but also found that she was limited in her ability to reach in all directions, including overhead, and had limitations in gross and fine manipulation on her right side due to carpal tunnel syndrome. [R217].[11] He found her complaints partially credible. [R219].

### E.     Workers' Compensation Board Award

On June 21, 2004, an administrative law judge with the Georgia State Board of Workers' Compensation awarded Plaintiff Temporary Total Disability ("TTD") benefits. [R234-39]. The ruling quoted a November 2003 opinion letter from Dr. McBride,[12] as follows:

---

[11]     An RFC evaluation approximately one year earlier, on May 19, 2002, found the same limitations. [R204-11].

[12]     The letter itself is not contained in the record either as a medical record of Dr. McBride or in any other form.

14

> "In my opinion with regard to Ms. Carol Miles as her authorized treating physician, to a reasonable degree of medical certainty, Ms. Miles has several work-related repetitive motion injuries to right upper extremity, right wrist and elbow.  These repetitive injuries occurred as a result of her 19 years of work on a calculator as an accounting clerk for the State of Georgia.  She has undergone three surgeries; she wears wrist braces and she has difficulty on holding weights that weigh more than a pound or two.  She is not able to do work as a result of her injuries."

[R238].

Accepting Dr. McBride's opinion as to the cause of injury, the Workers' Compensation Board ALJ concluded that Plaintiff's "medical problem was caused by her work, and that the injuries were sustained in the course and scope of her employment.  Consequently, the employee's request for TTD from June 30, 2002 and continuing is granted."  [*Id.*].[13]

F.     *Evidentiary Hearing Before the Social Security ALJ*

Plaintiff was 46 years old at the time of the hearing.  She completed high school and received a certificate for some post-high school accounting classes.  Plaintiff testified that she worked for eighteen years as a paraprofessional accountant for the

---

[13]     It appears that the Worker's Compensation Board decision was submitted for the first time in the present case to the Appeals Council following the August 2005 denial of benefits.  [*See* R3A].  This portion of the record also contains Plaintiff's brief to the Appellate Division of the Georgia State Workers' Compensation Board. [R223].  However, the record is silent as to the outcome of any appeal.  For purposes of this Order, the Court assumes that the workers' compensation award was affirmed.

15

AO 72A
(Rev.8/8
2)

State of Georgia's Department of Education and that the last day she worked was June 28, 2002.  [R248-49].

Plaintiff further testified that she had "problems with both [her] hands, carpal tunnel syndrome . . . it's just pain all the time, pain, numbness, pain . . ."  [R249]. She testified that she experienced constant pain in her fingers, thumb and in her wrist, up her arm and shoulders and sometimes in her face, [R250], and that the pain had grown worse since the surgeries on her right hand and shoulder.  [R249-50]. She described the pain as "sharp" and "shooting."  [R253].  She also claimed that the pain had not diminished since she stopped working, despite the fact that she was no longer performing repetitive motions on a calculator.  [R253-54].

On the day of the hearing, Plaintiff's attorney submitted a letter from Emory University dated June 10, 2005, regarding Plaintiff's psychiatric condition.  [R245]. In response to the ALJ's inquiry regarding the letter, Plaintiff testified that she had visited Emory to inquire about a depression study and that someone from the program told her she was "severely depressed" and recommended that she see a psychiatrist. Plaintiff had not yet seen a psychiatrist at the time of the hearing.  [R254]. She testified, however, that she felt "down all the time" because she had to "have someone do everything. "  [R254-55].

16

AO 72A
(Rev.8/8
2)

In response to the ALJ's question regarding medication, Plaintiff testified that she took Vicodin three times a day [R251]; Diovan for high blood pressure; Ultram for pain four times a day; Relafen, an anti-inflammatory; Metalol for her heart; Prevacid for acid reflux; and Gemfibrozil for cholesterol. [R252]. Plaintiff testified that she was "drowsy, sleepy all the time." [R253].

Upon examination by her attorney regarding her daily activities, Plaintiff testified that she got up at 5:00 a.m., dressed, and took her daughter to summer school. In the afternoon, she picked up the child and did "a lot of running around with the kids." She testified that she did not go to the store by herself. She went to bed around 10:00 p.m. and slept through the night. Plaintiff stated that her husband or daughter prepared meals and that she sometimes required help dressing, such as zipping up a dress. Plaintiff could read a newspaper but stated that she had to read the story three times to recall the story line. [R258-59].

The vocational expert ("VE") testified that Plaintiff's prior work was sedentary, skilled work and that she could not perform her past relevant work. [R260-61]. The ALJ posed three hypothetical questions to the VE. He first asked whether a hypothetical person with Plaintiff's age and education with occasional gross handling and occasional fine manipulation limitations could perform any medium jobs, including

17

past relevant work.  The VE stated that Plaintiff could not perform any jobs at the medium exertional level but could perform some light jobs.  The ALJ then inquired whether a hypothetical person with the same characteristics and limitations could perform light work.  The VE responded that some light unskilled and semi-skilled work existed, such as gate guard, doorkeeper, children's attendant, and bakery worker inspector.  [R261-62].  For the final hypothetical, the ALJ inquired whether any jobs in the regional or national economy existed for a hypothetical person with occasional gross handling and occasional fine manipulation with moderate difficulty in concentration, persistence in pace with a limitation of 40 to 50 percent for detailed, complex and simple work.  The VE responded that no jobs were available given those limitations.  [R262].

### III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.   The claimant met the disability insured status requirements of the Act on July 2, 2001, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since July 2, 2001.

18

AO 72A
(Rev.8/8
2)

3.     The medical evidence establishes that the claimant has derangement of the right shoulder, De Quervain's tend[i]nitis right thumb, right carpal tunnel syndrome, controlled hypertension, but that does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.     Claimant's allegations are only partially credible for the reasons set forth in the body of this decision.

5.     The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for occasional gross handling and fine manipulation (20 CFR 404.1545).

6.     The claimant is unable to perform her past relevant work as an accounting clerk.

7.     The claimant's residual functional capacity for the full range of light work is reduced by the limitations in finding number 5.

8.     The claimant is 46 yeas old, which is defined as a "younger individual" (20 CFR 404.1563).

9.     The claimant has a high school education (20 CFR 404.1564).

10.    The undersigned is unable to determine whether claimant has transferable skills.

11.    Based on an exertional capacity for light work, and the claimant's age, education and work experience, section 404.1569 and Rules 202.21 and 202.22, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

AO 72A
(Rev.8/8
2)

12.    Although she cannot perform a full range of light work there are still a significant number of jobs that she can perform, as set forth in the vocational expert's testimony. These include work as a gate guard, children attendant and baker worker inspector. Thus the above rules used as a framework for decision making direct a finding of "not disabled."

13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404-1520(g)).

[R15]. The ALJ explained that Plaintiff's RFC prevented her from performing the full exertional demands and requirements of her past relevant work. [R14]. The ALJ determined, however, that Plaintiff could perform other work in the national economy. In making this determination, the ALJ first summarized Plaintiff's medical history. [R12-14]. He then noted that he considered the State Agency's consultant physician's assessment and the Plaintiff's subjective complaints and limitations. [R13]. The ALJ summarized Plaintiff's testimony at the hearing, finding that her testimony regarding her functional restrictions was not fully credible. [R14]. The ALJ observed that the VE found that an individual with Plaintiff's background and RFC could perform a significant number of jobs at the light exertional level, such as gate guard, children attendant, and bakery worker inspector. [*Id.*]. As a result, the ALJ found that Plaintiff

AO 72A
(Rev.8/8
2)

was not disabled at any time after her alleged onset date because she could perform other jobs in the national economy.  [*Id.*].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.  *See* 20 C.F.R. § 404.1512(a).  The Commissioner uses a five-step sequential process

to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant must prove at step one that she is not undertaking substantial gainful activity.  *See* 20 C.F.R. § 404.1520(b).  At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments which significantly limits her ability to perform basic work-related activities.  *See* 20 C.F.R. § 404.1520(c).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience.  *See* 20 C.F.R. § 404.1520(d).  At step four, if the claimant is unable to prove the existence of a listed impairment, she must prove that the impairment prevents performance of past relevant work.  *See* 20 C.F.R. § 404.1520(e).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. § 404.1520(f).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must

AO 72A
(Rev.8/8
2)

prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that she is unable to engage in any substantial gainful activity that exists in the national economy. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## V.   SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*,

AO 72A
(Rev.8/8
2)

932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

In Plaintiff's initial brief, under the section tilted "Argument," Plaintiff alleged that the "ALJ failed to consider the exertional and non-exertional impairments when judging Plaintiff's residual functional capacity."  [Doc. 13 at unnumbered page 6].  At oral argument, Plaintiff argued that the ALJ erred by failing: (1) to give proper

AO 72A
(Rev.8/8
2)

weight to the State of Georgia's Board of Workers' Compensation decision awarding Plaintiff workers compensation benefits; (2) to consider the side effects of Plaintiff's medications and her subjective complaints of pain when formulating her residual functional capacity; and (3) to consider Plaintiff's alleged depression in evaluating her RFC.

The Court need not consider claims not raised in a party's initial brief and made for the first time at oral argument.  [Doc. 10 at 3 ("The issues before the Court are limited to the issues properly raised in the briefs.")]; *see also APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) ("[W]e do not consider claims not raised in a party's initial brief and made for the first time at oral argument.").  Nonetheless, given the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of her day in court, *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1317 (11th Cir. 2002); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985), the Court discusses each claim of error on its merits, in turn.

25

A.     *The ALJ's Consideration of the State Award of Workers Compensation Benefits.*

Plaintiff contends that the ALJ's decision that she could engage in light work is not supported by substantial evidence because the Georgia Workers' Compensation Board awarded Plaintiff disability retirement benefits.  The Commissioner responded at oral argument that a Social Security ALJ owed only great, but not controlling weight, to this conclusion of disability.  The Commissioner also argued that the Social Security ALJ properly considered the evidence from the State Agency medical consultants in his determination. The Commissioner argues that because the ALJ put found functional restrictions than did the State Agency examiners, the findings of the State Agency examiners actually undermine Plaintiff's allegations of total disability and provide substantial evidence to support the ALJ's findings.

The problem with both Plaintiff's and the Commissioner's arguments about the workers' compensation board award is that the evidence of the award was not presented to the Social Security ALJ, but rather to the Appeals Council after the Social Security ALJ issued his decision denying benefits to Plaintiff.  Thus, the only plausible argument available to Plaintiff is that the Appeals Council erred in not remanding the case back to the ALJ for consideration of the workers' compensation award.

26

In order to obtain a remand for consideration of new evidence, Plaintiff must show that: "there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). Without reaching the second prong of this test, it is obvious that Plaintiff cannot satisfy the first and third prongs. The evidence is not new, in that the ALJ was aware that Plaintiff was on state disability, [R12], and Plaintiff testified at the evidentiary hearing about being on retirement disability. [R257]. Nor has Plaintiff shown any cause for not submitting either the Workers' Compensation Board award, dated June 21, 2004, or the letter from Dr. McBride, dated November 2003, which was quoted therein. Plaintiff's counsel represented Plaintiff in the State proceeding, and both the decision granting the award and Dr. McBride's letter referenced therein were in existence over one year before the June 30, 2005, administrative evidentiary hearing in this case.

27

Accordingly, the Commissioner did not err in not considering the workers'
compensation decision presented for the first time at the Appeals Council stage.[14] [15]

---

[14]     As to the effect of the workers' compensation award decision, it is true that
"the findings of disability by another agency, although not binding on the
[Commissioner], are entitled to great weight." *Falcon v. Heckler,* 732 F.2d 827, 831
(11th Cir. 1984) (quoting *Bloodsworth,* 703 F.2d at 1241).

     However, the Court also observes that the definition of disability under the Act
differs from that found in the Georgia Workers' Compensation Act.  One is disabled
for purposes of Social Security upon the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  On the other
hand, the inquiry for disability under the Georgia workers' compensation provisions
is "'whether the employee's injury *sustained during the course of the employment*
caused him to be disabled to any extent, in other words, whether it caused a loss of
earning capacity.'" *Georgia Power Co. v. Brown,* 311 S.E.2d 236, 238, 169 Ga. App.
45, 48 (Ct. App. 1983) (quoting *Beachamp v. Aetna Casualty and Surety Co.,* 145
S.E.2d 605, 607, 112 Ga. App. 417, 418 (Ct. App. 1965)) (emphasis supplied).  Thus,
the standard for disability under the federal Act and the State workers' compensation
provisions is different.  Moreover, a review of the workers' compensation award
decision demonstrates that the issue presented to the ALJ was not the scope or extent
of Plaintiff's injury but instead whether she was injured during the course of her
employment with the State.

[15]     Given  the  Court's  conclusion  that  Plaintiff  was  not  entitled  to
consideration of the workers' compensation award decision, the Court will not discuss
in depth the Commissioner's oral argument that the Social Security ALJ found greater
limitations than the State Agency consultants.  While that is true, there is no evidence
that the reports of the State Agency consultants to which the Commissioner referred
were part of the workers' compensation board's record.  However, the Commissioner
is not faulted by the Court for this argument, since he was responding to a contention
by Plaintiff raised for the first time at oral argument.

28

B.      *The ALJ's Failure to Include Depression as a Severe Impairment*

Plaintiff argues that the ALJ's determination that Plaintiff could perform light work with restrictions is not supported by substantial evidence because he did not include depression as a severe impairment when formulating her RFC. The Commissioner responds that Plaintiff presented no evidence that she experienced on-going problems with depression or any other mental condition.

The ALJ found no evidence that Plaintiff had been diagnosed, treated or evaluated for a mental impairment, [R14], and Plaintiff has not offered any evidence to the contrary. Plaintiff asserts only that she " has taken part in a depression study," [Doc. 13 at 4], and testified at the hearing that she was depressed but not undergoing any treatment for depression. [R254]. She did not allege a mental impairment on her disability application, [*see* R53], and none of her treating physicians indicated problems with depression, that Plaintiff experienced depression for twelve months, or that it impaired her ability to perform basic work activities. *Holley v. Chater*, 931 F. Supp. 840, 849 (S.D. Fla. 1996) (lack of evidence to show claimant was depressed for a period of twelve months or that depression caused significant limitations in work activities supported a finding of not disabled due to depression); *see also Osborn v. Barnhart*, 194 Fed. Appx. 654, 664 (11th Cir. 2006) (ALJ did not err

in disregarding claimant's alleged depression because it did not "impair his ability to perform basic work activities").  Remand is only required "when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega*, 265 F.3d at 1219.  Because there is no evidence in the record that Plaintiff had a diagnosis of depression, or that any alleged depression met the requirements under the regulations to be considered an impairment that must be considered in a determination of disability, substantial evidence supports the ALJ's finding that depression was not a medically determinable impairment.  Remand on this ground is not mandated.

C.     *The ALJ's Credibility Determination*

Although not a model of clarity, Plaintiff appears to argue in her briefs that, when determining her RFC, the ALJ did not properly consider Plaintiff's subjective complaints of disabling pain and side-effects from her medications.  Plaintiff also contends that  pain and side-effects prevent her from performing any of the jobs identified by the VE.  Plaintiff argues that this failure to consider her pain and impairments from her medication requires that this case be remanded for a proper determination of her RFC, or reversed and benefits awarded.

30

The Commissioner responds that remand or reversal is not appropriate because the ALJ properly considered Plaintiff's complaints of disabling pain and other symptoms. The Commissioner contends that the ALJ applied the proper legal standard and that substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not fully credible because her subjective complaints were inconsistent with the objective medical findings, her medical treatment, and her medication usage and daily activities.

### 1. The Pain Standard

In evaluating whether a Plaintiff is disabled based on a claimant's testimony regarding her pain or other subjective symptoms, Eleventh Circuit precedent requires the ALJ to evaluate whether there is: "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The ALJ need not cite to the pain standard so long as "his findings and discussion indicate that the standard was applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

31

The pain standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility." *Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1189 n.1 (N.D. Ala. 2006). Thus, "[i]f the pain standard is satisfied, the ALJ must consider the plaintiff's subjective complaints." *James v. Barnhart*, 261 F. Supp. 2d 1368, 1372 (S.D. Ala. 2003). When a claimant's subjective testimony is supported by medical evidence that satisfies the pain standard, she may be found disabled. *Holt*, 921 F.2d at 1223. If the ALJ determines, however, that claimant's testimony is not credible, "the ALJ must show that the claimant's complaints are inconsistent with [her] testimony and the medical record." *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1368 (N.D. Ga. 2006).

The ALJ evaluated Plaintiff's subjective complaints in accordance with SSR 96-7p, which contains nearly identical language to that of the Eleventh Circuit pain standard. Compare SSR 96-7p with *Dyer*, 395 F.3d at 1210. The ALJ examined whether Plaintiff had produced "medical signs and laboratory findings of a physical or mental impairment that could reasonably be expected to produce the symptoms" of which she complained. [R13]. He then determined that the objective medical evidence did not support a finding of disabling stomach or back problems, an impairment to Plaintiff's left hand, or hypertension. [*Id.*]. Plaintiff does not address these conditions

32

in her brief and, therefore, the Court concludes that she does not challenge these findings as erroneous.  *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1140 (N.D. Ga. 1997) (claims not addressed deemed abandoned).

The ALJ found, however, that Plaintiff had presented objective medically determinable impairments of derangement of the right shoulder, de Quervain's tendinitis right thumb and right carpal tunnel syndrome but concluded that "claimant's testimony as to the extent of her functional restrictions is at odds with other information in the file."  [R14].  Because the ALJ then went on the find that Plaintiff's complaints of disabling pain were not fully credible, he implicitly found that either the objective medical evidence confirmed the severity of the alleged pain arising from that condition or an "objectively determined medical condition . . . of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer,* 395 F.3d at 1210. The Court, therefore, turns to whether the ALJ's credibility determination regarding Plaintiff's allegations of disabling pain and impairment from side-effects from pain medication was legally sufficient and if so, whether it was supported by substantial evidence.  *See James*, 261 F. Supp. 2d at 1372 (requiring ALJ to consider claimant's subjective complaints if the pain standard is met).

33

### 2.      *Plaintiff's Credibility*

"[C]redibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11ᵗʰ Cir. 2005). The assessment of a claimant's credibility about her pain and other symptoms and their effect on her ability to function must be based on a consideration of all of the evidence in the case record. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p. If the ALJ decides to discredit a claimant's subjective testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11ᵗʰ Cir. 1988)); *see also* 20 C.F.R. § 416.929; SSR 96-7p; *Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1310 (M.D. Fla. 2002). A reviewing court will not disturb a clearly articulated credibility finding if there is substantial supporting evidence in the record. *Kieser*, 222 F. Supp. 2d at 1310.

The Court finds that the ALJ clearly articulated specific reasons for finding that Plaintiff's allegations regarding her pain and limitations were not fully credible. Because Plaintiff did not make any specific arguments as to how the ALJ erred in his credibility finding, asserting only that "Plaintiff suffers constant pain, has been prescribed ongoing prescription pain medications and has very limited range of motion," the Court initially observes that the ALJ considered the required factors when

34

AO 72A
(Rev.8/8
2)

making his credibility determination.  These factors included the objective clinical findings, Plaintiff's daily activities, her use and side effects of medication, her prior treatments to relieve pain, as well as contradictions in Plaintiff's representations of her functional capacity and the State agency consultative examinations.   [R13]. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p (enumerating factors for credibility determination).[16]

The Court also concludes that the ALJ's decision that Plaintiff's allegations of pain were only partially credible is supported by substantial evidence.  While Plaintiff

---

[16]    Social Security Ruling 96-7p provides that in addition to the objective medical evidence, the ALJ must consider:

1.  The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; 20 C.F.R. § 404.1529(a).

AO 72A
(Rev.8/8
2)

contends that she has a very limited range of motion, as the ALJ observed, the medical records indicated that her right forward elevation was up to 110 degrees with 150 degrees being normal. [R12, 120].  Other evidence in the record also contradicts Plaintiff's assertion.  For example, Dr. McBride noted on June 29, 2001, that she had full overhead elevation and 5/5 rotator cuff strength, [R129], and in July of 2001, he observed positive impingement sign but noted that Plaintiff had "near full overhead elevation." [R128].  Similarly, on December 28, 2001, he observed  right shoulder elevation at 120 degrees.  [R122].

An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."  SSR 96-7p. In this case, the Commissioner correctly observes that Plaintiff did not see Dr. McBride again until January 2003, five months after she alleged that she became totally disabled, when she returned with symptoms of left hand pain.  After that January visit to Dr. McBride, the record contains no evidence that Plaintiff saw any other physicians.  [R13]. *See Casher v. Halter*, No. Civ.A. 00-0110-AH-L, 2001 WL 394921 at * 16 (S.D. Ala. Mar. 29, 2001) (lack of history of treatment since alleged onset date supported finding claimant's testimony of pain not credible); *Fessler v. Apfel*, 11 F. Supp. 2d 1244, 1252 (D. Colo. 1998) (unexplained lengthy gaps between visits to treating physician

36

supported ALJ's finding of not disabled).  Moreover, although Dr. McBride and Plaintiff's physical therapist noted that Plaintiff still experienced pain, both noted improvement in her condition.  [*See* R12,123-27, 181-194].  Specifically, Dr. McBride noted that Plaintiff was experiencing "gradual improvement" or was "doing well" in multiple treatment notes, [R121, 122, 123, 124, 125, 126, 127], and instructed her to return on an as needed basis.  [*See* R120-21].  Further, no medical diagnosis in the record supported Plaintiff's complaints, in July and August 2002, of low back and leg pain. Neither Plaintiff's lack of medical treatment after her onset date or the fairly optimistic reports from Dr. McBride supports a conclusion that Plaintiff had a condition of such severity to cause disabling pain.

Plaintiff's limited use of pain medication also does not support her allegations of disabling pain.  The record indicates that most of Plaintiff's pain treatment and medication was prescribed prior to her onset date, which follows, as the record indicates that Plaintiff only visited a physician three times after her onset date. Even taking into consideration Plaintiff's pre-onset use of medication, over approximately two years, beginning in February of 2001 until January of 2003, Plaintiff received pain medication for approximately half of that time.  The Court notes that several of these were sample medications and not prescriptions and that she received

37

only one prescription - - for complaints of left hand pain - - but no pain medication after

her alleged onset date in response to complaints of pain in her right side.  Although

Plaintiff testified at the hearing that she still took Vicodin and Relafen, [R251-53],

the record contains no evidence to support this assertion.[17]  *Harwell v. Heckler*,

735 F.2d 1292 (11th Cir. 1984) (lack of regular use of potent pain medication substantial

evidence supporting ALJ's determination claimant not disabled); *Falcon*, 732 F.2d at

832 (noting lack of use of pain medication as evidence of non-significant impairment).

Accordingly, because Plaintiff has not presented any evidence of frequent use of these

prescription pain medications, the ALJ's decision not to credit Plaintiff's subjective

testimony as to the disabling nature of the alleged side-effects of these medication is

also supported by substantial evidence.

Although Plaintiff argues that she is unable to perform certain tasks, such as open

water bottles, hold pots and pans and requires assistance for hygiene, the ALJ must

consider the "aggregate of Plaintiff's activities."  *Johnson v. Barnhart*, 268 F. Supp. 2d

1317, 1378 (M.D. Fla. 2002).  Therefore, the ALJ also properly considered Plaintiff's

---

[17]     The Commissioner correctly points out that while Plaintiff asserts in her brief  that a Dr. Hays Wilson prescribed Ultram and Relafen, [Doc. 13 at 5], medical records from this physician are not contained in the record.

AO 72A
(Rev.8/8
2)

testimony that she could drive, took her child to school in the morning and did "a lot of running around with the kids." [R255].

Moreover, when making a credibility determination, "the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala 2001) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996)). Here, the ALJ specifically noted that Plaintiff had previously claimed on her disability report that she cooked and shopped with assistance but now claimed to be unable to perform these tasks. [R80]. *See Blake v. Massanari*, No. Civ. A. 00-0120-AH-L, 2001 WL 530697 at * 14 (S.D. Ala. Apr. 26, 2001) (inconsistent representations by claimant regarding limitations affect credibility).

"The credibility of witnesses is for the Secretary to determine, not the courts." *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Viewing the record as a whole, the Court finds that the ALJ's conclusion that Plaintiff's subjective complaints of disability were "not consistent with a person who is totally disabled by upper body restrictions," [R14], to be supported by substantial evidence. *Chester*, 792 F.2d at 130

39

(to determine "whether substantial evidence exists, [the court] must view the record as a whole").

Accordingly, for the reasons set forth above, the undersigned concludes that no error has been demonstrated as to the ALJ's credibility determination.

## VII.   CONCLUSION

In conclusion, the Commissioner's final decision denying DIB benefits to Plaintiff is **AFFIRMED**.

The Clerk is **DIRECTED** to enter final judgment in favor of the Commissioner.

Let a copy of this Order be served upon counsel for the parties.

**IT IS SO ORDERED and DIRECTED**, this the 21st day of May, 2007.

_____
**ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE**

40